TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MARIA ELENA STITELER (Cal. Bar No. 296086)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6148
    Facsimile: (213) 894-0141
    E-mail:   maria.stiteler@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 19-00755-SVW-2 |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT TANIA SHANAE OLIVER |
| v. | |
| TANIA SHANAE OLIVER, | |
| Defendant. | |

1.   This constitutes the plea agreement between TANIA SHANAE OLIVER ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

    a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Count One of the indictment in United States v. Tania Shanae Oliver, CR No. 19-00755-

SVW-2, which charges defendant with Bank Fraud in violation of 18 U.S.C. § 1344(2).

      b.   Agree that all court appearances, including defendant's change of plea hearing and sentencing hearing, may proceed by video-teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearances are authorized by General Order 20-043 and Order of the Chief Judge 20-097 or another order, rule, or statute.  Defendant understands that, under the Constitution, the United States Code, the Federal Rules of Criminal Procedure (including Rules 11, 32, and 43), she may have the right to be physically present at these hearings. Defendant understands that right and, after consulting with counsel, voluntarily agrees to waive it and to proceed remotely.  Defense counsel also joins in this consent, agreement, and waiver. Specifically, this agreement includes, but is not limited to, the following:

        i.   Defendant consents under Section 15002(b) of the CARES Act to proceed with her change of plea hearing by VTC or telephone, if VTC is not reasonably available.

        ii.   Defendant consents under Section 15002(b) of the CARES Act to proceed with her sentencing hearing by VTC or telephone, if VTC is not reasonably available.

        iii. Defendant consents under 18 U.S.C. § 3148 and Section 15002(b) of the CARES Act to proceed with any hearing regarding alleged violations of the conditions of pretrial release by VTC or telephone, if VTC is not reasonably available.

      c.   Not contest facts agreed to in this agreement.

      d.   Abide by all agreements regarding sentencing contained in this agreement.

e.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

f.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

g.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

h.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessment.

i.   At or before the time of sentencing, satisfy any and all restitution/fine obligations based on ability to pay by delivering a certified check or money order to the Fiscal Clerk of the Court in the amount of $50,890, to be held until the date of sentencing and, thereafter, applied to satisfy defendant's restitution/fine balance.  Payments may be made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, 11th Floor, Los Angeles, California 90012.

j.   Ability to pay shall be assessed based on the Financial Disclosure Statement, referenced below, and all other relevant information relating to ability to pay.

k.   Defendant agrees that any and all restitution/fine obligations ordered by the Court will be due in full and immediately. The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by

3

1  which to satisfy defendant's payment of the full financial
2  obligation, including referral to the Treasury Offset Program.

3         l.   Complete the Financial Disclosure Statement on a form
4  provided by the USAO and, within 30 days of defendant's entry of a
5  guilty plea, deliver the signed and dated statement, along with all
6  of the documents requested therein, to the USAO by either email at
7  usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial
8  Litigation Section at 300 N. Los Angeles St., Suite 7516, Los
9  Angeles, CA 90012.

10        m.   Authorize the USAO to obtain a credit report upon
11 returning a signed copy of this plea agreement.

12        n.   Consent to the USAO inspecting and copying all of
13 defendant's financial documents and financial information held by the
14 United States Probation and Pretrial Services Office.

15                POSSIBLE PARTICIPATION IN CASA PROGRAM

16     3.   Defendant has applied for participation in the Court's
17 Conviction and Sentence Alternatives ("CASA") program.  Defendant
18 understands that her application will be reviewed by the USAO and the
19 CASA program team using their ordinary procedures for a determination
20 whether defendant would be accepted for participation in the CASA
21 program, and there is no certainty that defendant would be accepted
22 for participation in the CASA program.  With this understanding in
23 mind, defendant and the USAO agree as follows:

24        a.   After entry of defendant's guilty plea, defendant and
25 the USAO will request that preparation of a presentence report be
26 delayed, that any previously set sentencing date be vacated, and that
27 a status conference be scheduled for a date approximately 30 days
28 after entry of defendant's guilty plea;

b.   If the CASA program team determines that defendant should be accepted for participation in the CASA program, defendant and the USAO will execute an amended plea agreement incorporating the terms of defendant's participation in the CASA program, leaving all other terms of the instant plea agreement in effect ("CASA plea agreement");

c.   If defendant and the USAO file a CASA plea agreement, they will jointly request that the court (i) order that this case be transferred to the CASA judicial officer; (ii) refer defendant to the CASA program for the CASA program judicial officer to take defendant's amended guilty plea pursuant to the CASA plea agreement; and (iii) permit defendant to begin her participation in the CASA program;

d.   If either: (i) defendant is not accepted in the CASA program, or (ii) the Court does not agree to allow defendant's participation in the CASA program; then the Court shall be so advised at or prior to the status conference referenced in paragraph 3(a) above, defendant's guilty plea pursuant to this agreement shall remain in place, and the parties will jointly request that the Court set a date for defendant's sentencing and order that the United States Probation Office prepare defendant's presentence report.

<u>THE USAO'S OBLIGATIONS</u>

4.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant

agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations arising out of defendant's conduct described in the agreed-to factual basis set forth in paragraph 11.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.  Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

e.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

<u>NATURE OF THE OFFENSE</u>

5.   Defendant understands that for defendant to be guilty of the crime charged in Count One of the indictment, that is, Bank Fraud in violation of Title 18, United States Code, Section 1344(2), the following must be true: (1) defendant knowingly carried out a scheme

6

or plan to obtain money from a financial institution by making false statements or promises; (2) defendant knew that the statements or promises were false; (3) the statements or promises were material; that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money; (4) defendant acted with the intent to defraud, that is, an intent to deceive or cheat; and (5) the financial institution was federally insured.

## PENALTIES AND RESTITUTION

6.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1344(2), is: 30 years' imprisonment; a five-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.    Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any count dismissed pursuant to this agreement as well as all relevant conduct, as

defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is approximately $50,890, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

8.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that she is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

10.   Defendant and her counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including her attorney or the Court, can predict to an absolute certainty the effect of her conviction on her immigration status.  Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

11.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning on or about May 23, 2015, and continuing to on or about April 25, 2016, in Orange and Los Angeles Counties, within the Central District of California, defendant TANIA SHANAE OLIVER ("defendant"), knowingly and with intent to defraud, executed a scheme to defraud and obtain money from Bank of America, a federally insured financial institution, by means of material false and fraudulent pretenses and representations.

With knowledge of a unique programming feature of Bank of America's Automated Teller Machines ("ATMs"), which the bank has since changed, defendant loitered around Bank of America ATMs at various bank branches throughout Southern California.  While doing so, defendant watched as bank customers conducted transactions at the ATMs using their Bank of America ATM cards.  After misappropriating the ATM personal identification number ("PIN") of an unknowing bank customer, defendant would wait for the customer to complete their transaction and walk away from the ATM.  If the customer failed to hit a digital button that completely terminated all ATM access to the customer's account, defendant would access the customer's bank account, without authorization, by immediately going to the ATM, hitting a button that requested another transaction, and then re-entering the stolen PIN.  Defendant thereby falsely represented herself to be the actual bank customer who was entitled to withdraw money from the bank account associated with the customer's ATM card and PIN.  These false representations were material to Bank of America, that is, they had a natural tendency to influence and were capable of influencing, Bank of America to part with money.

After fraudulently gaining access to the customer's account, defendant would then execute, and attempt to execute, multiple

fraudulent and unauthorized withdrawals of cash from the customer's Bank of America account.  On at least four occasions, defendant engaged in this scheme in concert with a co-schemer ("first co-schemer"); and on at least four other occasions, defendant engaged in this scheme in concert with a different co-schemer ("second co-schemer").

By the above-described scheme, defendant made fraudulent and unauthorized cash withdrawals from approximately 119 separate customer accounts and thereby stole at least approximately $50,890 from Bank of America.  Among other transactions, defendant knowingly, and with intent to defraud, executed the following unauthorized ATM cash withdrawals using misappropriated PIN codes on the following dates:

> a.   On August 6, 2015, defendant made an $800 unauthorized cash withdrawal from the account of Bank of America customer N.V.D. using a bank ATM located in Garden Grove, California.  An ATM photograph shows defendant making this fraudulent withdrawal.
>
> b.   On August 7, 2015, defendant made a $900 unauthorized cash withdrawal from the account of Bank of America customer T.C.A. using a bank ATM located in Garden Grove, California.  An ATM photograph shows defendant making this fraudulent withdrawal.
>
> c.   On August 7, 2015, defendant made a $300 unauthorized cash withdrawal from the account of Bank of America customer R.M.C. using a bank ATM located in Garden Grove, California.  An ATM photograph shows defendant making this fraudulent withdrawal.

d.   On August 17, 2015, defendant and the first co-schemer acted in concert to make a $200 unauthorized cash withdrawal from the account of Bank of America customer Y.K.K. using a bank ATM located in Los Angeles, California.  An ATM photograph shows defendant and the first co-schemer making this fraudulent withdrawal.

e.   On September 3, 2015, defendant and the second co-schemer acted in concert to make an $820 unauthorized cash withdrawal from the account of Bank of America customer L.G.D. using a bank ATM located in Garden Grove, California.  ATM photographs show defendant and the second co-schemer making this fraudulent withdrawal.

f.   On September 3, 2015, defendant and the second co-schemer acted in concert to make a $200 unauthorized cash withdrawal from the account of Bank of America customer B.H. using a bank ATM located in Garden Grove, California.  ATM photographs show defendant and the second co-schemer making this fraudulent withdrawal.

g.   On September 3, 2015, defendant and the second co-schemer acted in concert to make made an $800 unauthorized cash withdrawal from the account of Bank of America customer W.E.J. using a bank ATM located in Garden Grove, California.  ATM photographs show defendant and the second co-schemer making this fraudulent withdrawal.

h.  On October 28, 2015, defendant and the first co-schemer acted in concert to make a $200 unauthorized cash withdrawal from the account of Bank of America customer J.S.G. using a bank ATM located in Los Angeles, California.  ATM photographs show defendant and the first co-schemer making this fraudulent withdrawal.

i.  On January 23, 2016, defendant and the first co-schemer acted in concert to make a $200 unauthorized cash withdrawal from the account of Bank of America customer J.C.W. using a bank ATM located in El Monte, California.  ATM photographs and video surveillance show defendant and the first co-schemer making this fraudulent withdrawal.

j.  On February 15, 2016, defendant and the second co-schemer acted in concert to make made a $1,000 unauthorized cash withdrawal from the account of Bank of America customer L.L. using a bank ATM located in Monterey Park, California.  ATM photographs and video surveillance show defendant and the second co-schemer making this fraudulent withdrawal.

k.  On March 5, 2016, defendant and the first co-schemer acted in concert to make a $600 unauthorized cash withdrawal from the account of Bank of America customer M.H.C. using a bank ATM located in Monterey Park, California.  ATM photographs and video surveillance show defendant and the first co-schemer making this fraudulent withdrawal.

During and in relation to the commission of bank fraud, defendant knowingly used without legal authority the means of identification of other people, namely, the ATM PINs of the victims, in conjunction with the victims' ATM cards and encoded card and account numbers, which defendant knew belonged to real people. Specifically, on March 5, 2016, defendant used the ATM PIN in conjunction with the ATM card and its encoded card and account numbers, of victim M.H.C., during and in relation to the commission of bank fraud.

SENTENCING FACTORS

12.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

13.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss exceeded $40,000: | +6 | U.S.S.G. § 2B1.1(b)(1)(D) |
| Offense involved 10 or more victims: | +2 | U.S.S.G. § 2B1.1(b)(2)(A) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  Specifically, the USAO reserves the right to argue for, and the defendant reserves the right to argue against, application of the vulnerable victim enhancement pursuant to U.S.S.G. § 3A1.1(b)(1).  The parties agree that the loss adjustment +6 adequately addresses the conduct for which defendant should be held responsible considering her own acts and the joint conduct of others that was reasonably foreseeable to her within the meaning of U.S.S.G. § 1B1.3, comment. (n.3).

14.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.    The right to persist in a plea of not guilty.

b.    The right to a speedy and public trial by jury.

c.    The right to be represented by counsel –– and if necessary have the Court appoint counsel –– at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel –– and if necessary have the Court appoint counsel –– at every other stage of the proceeding.

        d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

        e.    The right to confront and cross-examine witnesses against defendant.

        f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

        g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

        h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

17.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

18.  Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 14 and the criminal history category calculated by the

Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence, with the exception of the Court's calculation of defendant's criminal history category; (b) the term of imprisonment imposed by the Court, except to the extent it depends on the Court's calculation of defendant's criminal history category; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $50,890; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in the Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the

statement of facts provided herein is insufficient to support defendant's plea of guilty.

20. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 14 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following: the amount of restitution ordered if that amount is less than $50,890.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

21. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

RESULT OF VACATUR, REVERSAL OR SET-ASIDE

22.   Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

23.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

24.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

25.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

26.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

27.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information

to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

28.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

29.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional

21

1  promise, understanding, or agreement may be entered into unless in a

2  writing signed by all parties or on the record in court.

3              PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

4       30.  The parties agree that this agreement will be considered

5  part of the record of defendant's guilty plea hearing as if the

6  entire agreement had been read into the record of the proceeding.

7  AGREED AND ACCEPTED

8  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
9  CALIFORNIA

10  TRACY L. WILKISON
    Acting United States Attorney

11

12  _____          August 31, 2021
13  MARIA ELENA STITELER                     _____
    Assistant United States Attorney         Date

14  _____          _____
15  TANIA SHANAE OLIVER                       8/31/21
    Defendant                                 Date

16  _____
17  EUGENE HANRAHAN                           8/31/2021
    Attorney for Defendant TANIA SHANAE       _____
    OLIVER                                    Date

18

19

20

21

22

23

24

25

26

27

28

                                    22

<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          _____
TANIA SHANAE OLIVER                       Date
Defendant

23

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

I am TANIA SHANAE OLIVER's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of her rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____          8/31/21
EUGENE HANRAHAN                           Date
Attorney for Defendant TANIA SHANAE
OLIVER